1

Seth Ptasiewicz, Esq. (SP-8875)
**KROLL HEINEMAN PTASIEWICZ & PARSONS, LLC**
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, New Jersey 08830
Tel: (732) 491-2100
Fax: (732) 491-2120
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY BUILDING LABORERS' STATEWIDE PENSION FUND AND TRUSTEES THEREOF, | |
| Plaintiffs, | Civil Action No.: |
| v. | CIVIL ACTION |
| INNOVATIVE MASONRY, LLC, INNOVATIVE DESIGN & DEVELOPMENT, INC., KLJ CONSTRUCTION INC. J AND S CONCRETE, INC., HAMMOND REAL ESTATE PARTNERS LIMITED LIABILITY COMPANY, and E & N CONSTRUCTION, INCORPORATED, | **COMPLAINT** |
| Defendants. | |

Plaintiffs New Jersey Building Laborers' Statewide Pension Fund and Trustees Thereof ("the Pension Fund"), being administered at 3218 Kennedy Boulevard, Jersey City, New Jersey 07306; by their undersigned attorneys, as and for their Complaint against Defendants, Innovative Masonry, LLC ("Innovative Masonry") having its principal place of business at 11 Sanford Road, Budd Lake, New Jersey 07828, Innovative Design & Development, LLC ("Innovative Design")

having its principal place of business at 11 Sanford Road, Budd Lake, New Jersey 07828, KLJ Construction Inc. ("KLJ") having its principal place of business at 100 Hammond Avenue, Passaic, New Jersey 07055, J and S Concrete, Inc. ("J and S") having its principal place of business at 75-77 Rome Street, Newark, New Jersey 07105, Hammond Real Estate Partners, Limited Liability Company ("Hammond") having its principal place of business at 11 Sanford Road, Budd Lake, New Jersey 07828, and E&N Construction Incorporated ("E&N") having its principal place of business at 97 Hammond Avenue, Passaic, New Jersey 07055 (sometimes referred to herein as "Defendants") , allege and say as follows:

## NATURE OF THE CASE

1.      Plaintiffs bring this action to recover withdrawal liability due to the Pension Fund from Defendant. This action is based on provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. § 1001, *et seq.*, specifically, § 4201 of ERISA, 29 U.S.C. § 1381(a).

## PARTIES

2.      At all times relevant, the Pension Fund was, and still is, a trust fund established and maintained pursuant to § 302(c)(5) of the Labor Management Relations Act, ("LMRA"), 29 U.S.C. § 186(c)(5), an employee benefit plan within the meaning of § 3(3) of ERISA, 29 U.S.C. § 1301(a)(3). The Fund qualifies to commence this action under §§ 502(d)(1) and 4301(a)(1) of ERISA, 29 U.S.C. §§ 1132(d)(1) and 1451(a)(1). The Fund is administered at, and maintains its office and principal place of business at 3218 Kennedy Boulevard, Jersey City, New Jersey 07306.

3.      The Trustees of the Pension Fund are fiduciaries and as such are entitled to bring and maintain this action under § 4301(a)(1) of ERISA, 29 U.S.C. § 1451(a)(1). The Trustees bring

3

this action on behalf of themselves, the Fund, and the Fund's participants and beneficiaries, pursuant to §§ 4301(a)(1) of ERISA, 29 U.S.A. § 1451(a)(1). The Trustees, in their capacity as Trustees, maintain their offices and principal place of business at 3218 Kennedy Boulevard, Jersey City, New Jersey 07306.

4. Upon information and belief, Innovative Masonry is a New Jersey Corporation with its principal place of business at 11 Sanford Road, Budd Lake, New Jersey 07828. Innovative is an employer in an industry affecting commerce within the meaning of ERISA, including §§ 3(5), (11) and (12) of ERISA, 29 U.S.A. §§ 1002(5), (11), and (12).

5. Upon information and belief, Innovative Design is a New Jersey Corporation with its principal place of business at 11 Sanford Road, Budd Lake, New Jersey 07828. Innovative is an employer in an industry affecting commerce within the meaning of ERISA, including §§ 3(5), (11) and (12) of ERISA, 29 U.S.A. §§ 1002(5), (11), and (12).

6. Upon information and belief, KLJ is a New Jersey Corporation with its principal place of business at 100 Hammond Avenue Passaic, New Jersey, 07055. KLJ is an employer in an industry affecting commerce within the meaning of ERISA, including §§ 3(5), (11) and (12) of ERISA, 29 U.S.A. §§ 1002(5), (11), and (12).

7. Upon information and belief, J and S is a New Jersey Corporation with its principal place of business at 75-77 Rome Street, Newark, New Jersey 07105. J and S is an employer in an industry affecting commerce within the meaning of ERISA, including §§ 3(5), (11) and (12) of ERISA, 29 U.S.A. §§ 1002(5), (11), and (12).

8. Upon information and belief, Hammond is a New Jersey Corporation with its principal place of business at 11 Sanford Road, Budd Lake, New Jersey 07828. Hammond is an

employer in an industry affecting commerce within the meaning of ERISA, including §§ 3(5), (11) and (12) of ERISA, 29 U.S.A. §§ 1002(5), (11), and (12).

9. Upon information and belief, E &N is a New Jersey Corporation with its principal place of business at 97 Hammond Avenue, Passaic, New Jersey, 07055. E &N is an employer in an industry affecting commerce within the meaning of ERISA, including §§ 3(5), (11) and (12) of ERISA, 29 U.S.A. §§ 1002(5), (11), and (12).

## JURISDICTION AND VENUE

10. The jurisdiction of this Court is based upon § 4301(a)(1), (b) and (c) of ERISA, 29 U.S.C. § 1451(a)(1), (b), and (c), 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

11. Venue properly lies in this District under § 4301(d) of ERISA, 29 U.S.C. § 1451(d) because the Pension Fund is administered in New Jersey and Innovative does business in New Jersey.

## FACTS COMMON TO ALL COUNTS

12. At all times relevant to this action, Innovative Masonry was subject to a Collective Bargaining Agreement ("CBA") with the Union for work performed within the jurisdiction of the Union.

13. Under the terms of the CBA, Innovative Masonry was obligated to hire members of the Union to perform bargaining unit work covered by the CBA.

14. The CBA required Innovative Masonry to pay the Union members the wage scale as set forth in the CBA. The CBA also required Innovative to make fringe benefit contributions

5

on behalf of the Union members at the rates set forth in the CBA. The fringe benefit contributions included contributions to the Pension Fund.

15. Consistent with the terms of the CBA, Innovative Masonry remitted fringe benefit contributions to the Pension Fund uninterrupted on behalf of the Union members employed by Innovative until April 30, 2021.

16. Upon information and belief, on or about December 31, 2013, Innovative Masonry withdrew its recognition of the Union as its employees' bargaining representative.

17. By virtue of the withdrawal of recognition of the Union by Innovative Masonry, and continuation of it performing work covered by the CBA without contributing to the Pension Fund Innovative Masonry permanently affected a "complete withdrawal" from the Pension Fund within the meaning of § 4203 of ERISA, 29 U.S.C. § 1383.

18. The Pension Fund calculated Innovative Masonry's withdrawal liability as $909,643.00.

19. On or about August 9, 2022, the Pension Fund, pursuant to § 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1), prepared a payment schedule for the withdrawal liability and demand of payment in accordance with the payment schedule.

20. Having not received the first quarterly installment, on or about November 9, 2022, the Pension Fund advised Innovative Masonry of its failure to remit said quarterly installment and that failing to do so, Innovative Masonry was in default of its obligation within the meaning of § 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5). The Fund notified Innovative on or about November 9, 2022, that if it did not cure the default within sixty (60) days after its receipt of the written notification, it would be in default and the Fund and its Board of Trustees would require

6

the immediate payment of the outstanding liability from the due date of the first payment which was not timely made, as allowed by § 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5).

21. Innovative Masonry failed to cure the default thereby allowing the Pension Fund to accelerate payment of the withdrawal liability.

22. Innovative Masonry failed to demand arbitration to challenge the withdrawal liability assessment within the time parameters set forth under ERISA thereby permitting the Pension Fund to immediately seek payment of the full amount of the withdrawal liability together with all other relief permitted under ERISA.

23. Despite the clear, unequivocal obligations under ERISA, and in disregard of the demand for payment by the Pension Fund, Innovative Masonry failed and refused, and continues to fail and refuse, to pay the withdrawal liability to the Pension Fund, pursuant to § 4201(a) of ERISA, 29 U.S.C. § 1381(a) and is in default.

## CAUSES OF ACTION

## COUNT I

### (Unpaid withdrawal liability – ERISA § 4201(a), 29 U.S.C. § 1381(a) as against Innovative Masonry)

24. Plaintiffs hereby repeat each and every allegation previously set forth in the Complaint and incorporate same as though more fully set forth at length herein.

25. Prior to December 31, 2013, Innovative Masonry was obligated to, and did, remit contributions to the Pension Fund to finance benefits provided by Plaintiffs to the Pension Fund's participants and beneficiaries.

26.    Innovative Masonry ceased to have an obligation to contribute under the Pension Fund's plan and permanently affected a "complete withdrawal" from the Pension Fund within the meaning of § 4203 of ERISA, 29 U.S.C. § 1383.

27.    As a result of the complete withdrawal from the Pension Fund, Innovative Masonry is obligated to pay withdrawal liability to the Pension Fund, pursuant to § 4201(a) of ERISA, 29 U.S.C. § 1381(a).

28.    Plaintiffs have demanded that Innovative pay the withdrawal liability, which is due and owing.

29.    Innovative Masonry failed to make installment payments when due under the payment schedule for the withdrawal liability and, after having been notified of this and failing to cure, is in default within the meaning of § 4291(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5). Nor has Innovative commenced an arbitration to challenge the withdrawal liability assessment.

30.    As a result of the failure and refusal of Innovative Masonry to pay the withdrawal liability, Plaintiffs have been damaged in the amount of the withdrawal liability assessed by Plaintiff against Innovative Masonry, $909,643.00.

31.    In accordance with §§ 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b), Innovative Masonry is obligated to pay the outstanding amount of the withdrawal liability, liquidated damages, interest, and attorneys' fees and costs of this action.

**WHEREFORE**, the Pension Fund and its Trustees respectfully request judgment against Innovative as follows:

(a) For withdrawal liability;

(b) For interest;

 (c) For liquidated damages computed at the rate of twenty percent (20%) of the withdrawal liability;

 (d) For attorneys' fees and costs; and

 (e) For such other legal or equitable relief as the Court deems appropriate.

## COUNT II

### (Unpaid withdrawal liability – ERISA § 4201(a), 29 U.S.C. § 1381(a) as against Innovative Design)

32. Plaintiffs hereby repeat each and every allegation previously set forth in the Complaint and incorporate same as though more fully set forth at length herein.

33. At all times relevant, Innovative Design shared common ownership, common business operations and a common corporate structure with Innovative.

34. The same individual or individuals own, manage and oversee the operations of Innovative Design with Innovative Masonry.

35. Innovative Design maintains its principal places of business and operations at the same addresses with Innovative Masonry.

36. Innovative Design has collaborated with Innovative Masonry in aspects of labor and employee relations and operational management and control with Innovative Masonry.

37. Innovative Design shares and uses the same equipment and machinery, perform the same or similar types of services and use the same employees with Innovative Masonry.

38. For all intents and purposes Innovative Design and Innovative Masonry are a single employer, joint employer and/or alter egos for purposes of withdrawal liability.

39. To the extent that Defendant Innovative Masonry is no longer in business, Defendant Innovative Design is a successor employer for purposes of withdrawal liability.

40. Innovative Design satisfies the definition of controlled group for purposes of its joint liability for Defendant Innovative Masonry's withdrawal liability.

41. Defendant Innovative Design exists to avoid Defendant Innovative Masonry's obligations to pay withdrawal liability to the Fund.

42. Defendant Innovative Design is liable for the withdrawal liability of Defendant Innovative Masonry.

43. As a result of the failure and refusal of Innovative Design to pay the withdrawal liability, Plaintiffs have been damaged.

44. In accordance with §§ 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b), Innovative Design is are jointly and severally liable to pay the outstanding amount of the withdrawal liability, liquidated damages, interest, and attorneys' fees and costs of this action.

**WHEREFORE**, the Pension Fund and its Trustees respectfully request judgment against Innovative Design as follows:

(a) For withdrawal liability;

(b) For interest;

(c) For liquidated damages computed at the rate of twenty percent (20%) of the withdrawal liability;

(d) For attorneys' fees and costs; and

(e) For such other legal or equitable relief as the Court deems appropriate.

## COUNT III

### (Unpaid withdrawal liability – ERISA § 4201(a), 29 U.S.C. § 1381(a) as against KL)

45. Plaintiffs hereby repeat each and every allegation previously set forth in the Complaint and incorporate same as though more fully set forth at length herein.

46. At all times relevant, KLJ shared common ownership, common business operations and a common corporate structure with Innovative.

47. The same individual or individuals own, manage and oversee the operations of KLJ with Innovative Masonry.

48. KLJ maintains its principal places of business and operations at the same addresses with Innovative Masonry.

49. KLJ has collaborated with Innovative Masonry in aspects of labor and employee relations and operational management and control with Innovative Masonry.

50. KLJ shares and uses the same equipment and machinery, perform the same or similar types of services and use the same employees with Innovative Masonry.

51. For all intents and purposes KLJ and Innovative Masonry are a single employer, joint employer and/or alter egos for purposes of withdrawal liability.

52. To the extent that Defendant Innovative Masonry is no longer in business, Defendant KLJ is a successor employer for purposes of withdrawal liability.

53. KLJ satisfies the definition of controlled group for purposes of its joint liability for Defendant Innovative Masonry's withdrawal liability.

11

54. Defendant KLJ exists to avoid Defendant Innovative Masonry's obligations to pay withdrawal liability to the Fund.

55. Defendant KLJ is liable for the withdrawal liability of Defendant Innovative Masonry.

56. As a result of the failure and refusal of KLJ to pay the withdrawal liability, Plaintiffs have been damaged.

57. In accordance with §§ 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b), KLJ is jointly and severally liable to pay the outstanding amount of the withdrawal liability, liquidated damages, interest, and attorneys' fees and costs of this action.

**WHEREFORE**, the Pension Fund and its Trustees respectfully request judgment against KLJ as follows:

(a) For withdrawal liability;

(b) For interest;

(c) For liquidated damages computed at the rate of twenty percent (20%) of the withdrawal liability;

(d) For attorneys' fees and costs; and

(e) For such other legal or equitable relief as the Court deems appropriate.

## COUNT IV

### (Unpaid withdrawal liability – ERISA § 4201(a), 29 U.S.C. § 1381(a) as against J and S)

58. Plaintiffs hereby repeat each and every allegation previously set forth in the Complaint and incorporate same as though more fully set forth at length herein.

12

59. At all times relevant, J and S shared common ownership, common business operations and a common corporate structure with Innovative Masonry.

60. The same individual or individuals own, manage and oversee the operations of J and S with Innovative Masonry.

61. J and S maintains its principal places of business and operations at the same addresses with Innovative Masonry.

62. J and S has collaborated with Innovative Masonry in aspects of labor and employee relations and operational management and control with Innovative Masonry.

63. J and S shares and uses the same equipment and machinery, perform the same or similar types of services and use the same employees with Innovative Masonry.

64. For all intents and purposes J and S and Innovative Masonry are a single employer, joint employer and/or alter egos for purposes of withdrawal liability.

65. To the extent that Defendant Innovative Masonry is no longer in business, Defendant J and S is a successor employer for purposes of withdrawal liability.

66. J and S satisfies the definition of controlled group for purposes of its joint liability for Defendant Innovative Masonry's withdrawal liability.

67. Defendant J and S exists to avoid Defendant Innovative Masonry's obligations to pay withdrawal liability to the Fund.

68. Defendant J and S is liable for the withdrawal liability of Defendant Innovative Masonry.

69. As a result of the failure and refusal of J and S to pay the withdrawal liability, Plaintiffs have been damaged.

70.     In accordance with §§ 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b), J and S is jointly and severally liable to pay the outstanding amount of the withdrawal liability, liquidated damages, interest, and attorneys' fees and costs of this action.

**WHEREFORE**, the Pension Fund and its Trustees respectfully request judgment against J and S as follows:

(a) For withdrawal liability;

(b) For interest;

(c) For liquidated damages computed at the rate of twenty percent (20%) of the withdrawal liability;

(d) For attorneys' fees and costs; and

(e) For such other legal or equitable relief as the Court deems appropriate

## COUNT V

### (Unpaid withdrawal liability – ERISA § 4201(a), 29 U.S.C. § 1381(a) as against Hammond)

71.     Plaintiffs hereby repeat each and every allegation previously set forth in the Complaint and incorporate same as though more fully set forth at length herein.

72.     At all times relevant, Hammond shared common ownership, common business operations and a common corporate structure with Innovative Masonry.

73.     The same individual or individuals own, manage and oversee the operations of Hammond with Innovative Masonry.

74.     Hammond maintains its principal places of business and operations at the same addresses with Innovative Masonry.

14

75. Hammond has collaborated with Innovative Masonry in aspects of labor and employee relations and operational management and control with Innovative Masonry.

76. Hammond shares and uses the same equipment and machinery, perform the same or similar types of services and use the same employees with Innovative Masonry.

77. For all intents and purposes Hammond and Innovative Masonry are a single employer, joint employer and/or alter egos for purposes of withdrawal liability.

78. To the extent that Defendant Innovative Masonry is no longer in business, Defendant Hammond is a successor employer for purposes of withdrawal liability.

79. Hammond satisfies the definition of controlled group for purposes of its joint liability for Defendant Innovative Masonry's withdrawal liability.

80. Defendant Hammond exists to avoid Defendant Innovative Masonry's obligations to pay withdrawal liability to the Fund.

81. Defendant Hammond is liable for the withdrawal liability of Defendant Innovative Masonry.

82. As a result of the failure and refusal of Hammond to pay the withdrawal liability, Plaintiffs have been damaged.

83. In accordance with §§ 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b), Hammond is jointly and severally liable to pay the outstanding amount of the withdrawal liability, liquidated damages, interest, and attorneys' fees and costs of this action.

**WHEREFORE**, the Pension Fund and its Trustees respectfully request judgment against Hammond as follows:

(a) For withdrawal liability;

15

(b) For interest;

(c) For liquidated damages computed at the rate of twenty percent (20%) of the withdrawal liability;

(d) For attorneys' fees and costs; and

(e) For such other legal or equitable relief as the Court deems appropriate.

## COUNT VI

### (Unpaid withdrawal liability – ERISA § 4201(a), 29 U.S.C. § 1381(a) as against E&N)

84. Plaintiffs hereby repeat each and every allegation previously set forth in the Complaint and incorporate same as though more fully set forth at length herein.

85. At all times relevant, E&N shared common ownership, common business operations and a common corporate structure with Innovative Masonry.

86. The same individual or individuals own, manage and oversee the operations of E&N with Innovative Masonry.

87. E&N maintains its principal places of business and operations at the same addresses with Innovative Masonry.

88. E&N has collaborated with Innovative Masonry in aspects of labor and employee relations and operational management and control with Innovative Masonry.

89. E&N shares and uses the same equipment and machinery, perform the same or similar types of services and use the same employees with Innovative Masonry.

90. For all intents and purposes E&N and Innovative Masonry are a single employer, joint employer and/or alter egos for purposes of withdrawal liability.

16

91. To the extent that Defendant Innovative Masonry is no longer in business, Defendant E&N is a successor employer for purposes of withdrawal liability.

92. E&N satisfies the definition of controlled group for purposes of its joint liability for Defendant Innovative Masonry's withdrawal liability.

93. Defendant E&N exists to avoid Defendant Innovative Masonry's obligations to pay withdrawal liability to the Fund.

94. Defendant E&N is liable for the withdrawal liability of Defendant Innovative Masonry.

95. As a result of the failure and refusal of E&N to pay the withdrawal liability, Plaintiffs have been damaged.

96. In accordance with §§ 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b), E&N is jointly and severally liable to pay the outstanding amount of the withdrawal liability, liquidated damages, interest, and attorneys' fees and costs of this action.

**WHEREFORE**, the Pension Fund and its Trustees respectfully request judgment against E&N as follows:

(a) For withdrawal liability;

(b) For interest;

(c) For liquidated damages computed at the rate of twenty percent (20%) of the withdrawal liability;

(d) For attorneys' fees and costs; and

17

(e) For such other legal or equitable relief as the Court deems appropriate

                                              **KROLL HEINEMAN PTASIEWICZ & PARSONS, LLC**

                                              *Attorneys for Plaintiffs*

                                              *S/ Seth Ptasiewicz*
                                              SETH PTASIEWICZ

DATED: March 13, 2023

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Plaintiffs hereby certify that this matter in controversy is not the subject of other actions pending.

                                              **KROLL HEINEMAN PTASIEWICZ & PARSONS, LLC**

                                              *Attorneys for Plaintiffs*

                                              *S/ Seth Ptasiewicz*
                                              SETH PTASIEWICZ

DATED: March 13, 2023

18

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1(d)

Plaintiffs hereby certify that the amount in controversy exceeds the sum of $150,000.00, exclusive of interest, costs and claims for punitive damages.

                                          **KROLL HEINEMAN PTASIEWICZ & PARSONS, LLC**
                                          *Attorneys for Plaintiffs*

                                          *S/ Seth Ptasiewicz*
                                          SETH PTASIEWICZ

DATED: March 13, 2023